UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GINA KUN,<br><br>      Plaintiff,<br><br>v.<br><br>KINDERCARE EDUCATION LLC, f/k/a KNOWLEDGE UNIVERSE EDUCATION, LLC, a/k/a MERITOR ACADEMY,<br><br>      Defendants. | No. 16-CV-11727-DLC |

**MEMORANDUM AND ORDER ON DEFENDANT KINDERCARE EDUCATION LLC'S MOTION TO DISMISS (Dkt. No. 5)**

CABELL, U.S.M.J.

Defendant KinderCare Education LLC[1] (KinderCare) terminated longtime employee plaintiff Gina Kun in 2015 over her handling of two separate workplace matters. Kun contends in a two-count complaint that her termination violated Massachusetts public policy. (Dkt. No. 1). The defendant moves to dismiss the complaint for failure to state a claim; the plaintiff opposes the motion. (Dkt. Nos. 5, 8). For the reasons explained below, the motion to dismiss is ALLOWED IN PART and DENIED IN PART.

---

[1] KinderCare LLC was formerly known as Knowledge Universe Education, LLC a/k/a Meritor Academy. (Dkt. 6, p.1, n.1). For purposes of consistency the defendant is referred to here as KinderCare or the defendant.

I. **BACKGROUND**

A. <u>Facts</u>

Accepting the allegations in the complaint as true for purposes of the motion to dismiss, the plaintiff began working for KinderCare in 1991. (Compl. ¶ 3). As of January 2000, and at all relevant times thereafter, she held the title of Director. (Compl. ¶ 4). KinderCare ultimately fired the plaintiff over her handling of two separate matters, one occurring in 2013 and the other around 2015. (Compl. ¶ 6-13).

Regarding the 2013 incident, one of Kun's duties was to perform annual background checks on KinderCare employees. (Compl. ¶ 5). In or around November 2013, she initiated a background check on an employee by making an inquiry with the Massachusetts Department of Early Education and Care (EEC). (Compl. ¶ 6). The EEC responded that the Massachusetts Department of Children and Families (DCF) had reported a finding of physical abuse against the employee. (Compl. ¶ 7). State law requires that an employee receive an "additional review" where such a finding has been made.[2]

---

[2] Title 606 of the Code of Massachusetts Regulations (CMR) relates to the Department of Early Education and Care. "The purpose of 606 CMR 14.00 is to establish standardized procedures regarding the review of criminal records and other background information of [employees] for positions licensed, approved or funded by EEC. 606 CMR 14.01. Under this section, EEC employers are required to conduct background checks of its employees. 606 CMR 14.08. Certain background check results lead to presumptive or discretionary disqualification from employment. 606 CMR 14.12. However, when such a disqualification occurs, the employee "***shall*** receive additional review by the [employer] to determine if the [employee] poses an unacceptable risk of harm to children within the position sought," and must be offered the opportunity to submit additional, relevant information. 606 CMR 14.13 (emphasis added).

On December 6, 2013, the plaintiff notified the EEC in writing (as required) that the employee wished to undergo the additional review process. (Compl. ¶ 8). The plaintiff then conducted the additional review with the employee, pursuant to 606 CMR 14.00. (Compl. ¶ 9). After conducting the review, the plaintiff decided to keep the employee. (Id.).

Regarding the 2015 incident, the plaintiff in or about December 2014 learned of an allegation that a child had been left unattended in the KinderCare facility for a brief period of time. (Compl. ¶ 10). The plaintiff promptly investigated the matter and determined that the circumstances did not rise to a level that would otherwise require her to report the matter to DCF pursuant to Massachusetts General Laws (M.G.L.) chapter 119, section 51A.[3] (Compl. ¶ 10-11).

KinderCare subsequently learned of these two incidents in January 2015, in the course of conducting an internal audit. (Compl. ¶ 12). On February 24, 2015, KinderCare terminated the plaintiff based on her handling of each incident. KinderCare determined that the plaintiff had failed to follow corporate

---

[3] Section 51A requires a "mandated reporter" to report suspected abuse or neglect. It provides in pertinent part that: A mandated reporter who, in his professional capacity, has reasonable cause to believe that a child is suffering physical or emotional injury resulting from: (i) abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare, including sexual abuse; (ii) neglect, including malnutrition; (iii) physical dependence upon an addictive drug at birth, shall immediately communicate with the department orally and, within 48 hours, shall file a written report with the department detailing the suspected abuse or neglect…. M.G.L. c. 119, § 51A(a).

3

policies and expectations regarding background checks of existing employees in connection with the 2013 incident, and had neglected to follow reporting and/or investigative procedures relative to incidents of alleged abuse and/or neglect occurring at the school in connection with the 2015 incident. (Compl. ¶ 13).

KinderCare failed to ever provide any training or education to the plaintiff relative to handling matters like these. (Compl. ¶ 14-15). Similarly, the plaintiff was unaware of the existence of any corporate policies bearing on how KinderCare employees should handle matters like these. (Compl. ¶ 16-17).

### B. **The Complaint**

The complaint asserts two common law claims for wrongful termination, arising from the 2013 and 2015 incidents, respectively, but it could be clearer in articulating the specific reason why the plaintiff contends she was fired.

Regarding Count One, the narrative paragraphs preceding the actual count assert that KinderCare terminated Kun because she failed to follow corporate policies and expectations that she did not know of, and which may not have even existed. (Compl. ¶¶ 13-17). However, Count One itself alleges that Kun was terminated in retaliation for acting in "full compliance" with state law. (Compl. ¶¶ 19-21).

The same is true regarding Count Two; the narrative paragraphs assert that Kun was fired for failing to follow corporate policies

but Count Two itself alleges that she was terminated for acting in "full compliance" with state law. (Compl. ¶¶ 13-17, 23-24). Count Two also appears to allege that KinderCare fired the plaintiff because it "falsely concluded that she had not investigated the allegation" of a child having been left unattended. (Compl. ¶ 23). Giving the plaintiff the benefit of the ambiguity, the Court will read both counts as alleging wrongful termination based on (1) the plaintiff's purported failure to comply with internal rules and regulations, and (2) retaliation against the plaintiff for having correctly followed Massachusetts law in her handling of both matters. The Court will also read Count Two as additionally alleging termination based on the defendant's false conclusion that the plaintiff had not investigated the allegation of a child left unattended.

## II. Legal Standard

Courts reviewing a motion to dismiss under Rule 12(b)(6) must apply the notice pleading requirements of Rule 8(a)(2). *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66-67 (1st Cir. 2004). Under Rule 8(a)(2), a complaint need only include a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of the grounds for the plaintiff's claim. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Therefore, "a Court confronted with a Rule 12(b)(6) motion 'may dismiss a complaint only if it is clear that no relief

5

could be granted under any set of facts that could be proved consistent with the allegations.'" *Educadores Puertorriquenos en Accion* at 66 (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

To show that one is entitled to relief, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 556). A court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (*quoting Artuso v. Vertex Pharmaceuticals, Inc., 637 F.3d 1, 5 (1st Cir. 2011)). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 555).

### III. ANALYSIS

The plaintiff alleges that she was wrongfully terminated by KinderCare on February 24, 2015. Under Massachusetts law, an at-

will employee may be fired for any reason or no reason at all. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 89 (1st Cir. 2016) ("[A]n employer may lawfully terminate a relationship with an at-will employee at any time—for any reason, for no reason, and even for a reason that might be seen by some as unwise or unkind."). However, "courts have recognized limited exceptions to this general rule, including where the discharge is for reasons that violate clearly-established public policy." *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224, 232-33 (D. Mass. 2006) (internal quotations omitted). Where, as here, the plaintiff's claim for wrongful termination is premised on the public policy exception, Massachusetts recognizes that an employee may pursue a cause of action for wrongful termination. *King v. Driscoll*, 418 Mass. 576, 582 (1994); *see also Rodio*, 416 F. Supp. 2d at 236 (public policy must be "well-defined" or "clearly established" to effectively state a claim for wrongful termination). While there is no bright line between protected and non-protected actions, redress is available for employees who are terminated for asserting a legally guaranteed right, for doing what the law requires, or for refusing to do that which the law forbids. *Rodio*, 416 F. Supp. at 236 (*citing Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.,* 404 Mass. 145, 533 N.E.2d 1368, 1371 (1989)). Beyond these defined categories, the Massachusetts Supreme Judicial Court has "consistently interpreted the public policy

exception narrowly, reasoning that to do otherwise would convert the general rule into a rule that requires just cause to terminate an at-will employee." *King*, 418 Mass. at 582 (internal quotation and alteration marks omitted).

As such, the public policy exception does not necessarily protect all employee acts that are appropriate, or even socially desirable. *See Smith-Pfeffer*, 404 Mass. at 150. "In addition, the internal administration, policy functioning, and other matters of an organization, such as matters that do not rise to a level of public importance, cannot be the basis for a wrongful termination claim based on the public policy exception." *Butler v. Shire Human Genetic Therapies, Inc.*, No. 16-11692-MLW, 2017 WL 1007291, at *5 (D. Mass. March 15, 2017) (internal quotation marks omitted). "Instead, internal policy decisions are a matter of judgment for those entrusted with decision making within an institution, and an employee who disagrees with her employer's decisions, even an employee in a socially important occupation, may not seek redress in the courts." *Id.; see also Smith-Pfeffer*, 404 Mass. at 151 ("An employee, even one in a socially important occupation, who simply disagrees with her employer's policy decisions, may not seek redress in the courts."); *Mello v. Stop & Shop Cos,* 402 Mass. 555 (1988) (internal matters and policies cannot form the basis of a public policy exception to the at-will doctrine). "[I]t is a question of law for the judge to decide whether [the] retaliatory

firing of an at-will employee … would violate public policy." *Murray*, 821 F.3d at 90 (internal quotation and alteration marks omitted).

Applying these principles here, the Court agrees with the defendant that, as far as both counts purport to allege wrongful termination based on the plaintiff's failure to comply with internal policies regarding background checks and alleged abuse and/or neglect of children, the complaint does not make out a valid claim for wrongful termination in violation of public policy. *King,* 418 Mass. at 583 ("internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause"); *Smith-Pfeffer*, 404 Mass. at 151 (termination of employee in "socially important occupation" over disagreement with employer's policy decisions did not rise to the level of a termination in violation of public policy); *Mello,* 402 Mass. at 560-61 ("no public policy principle would have been violated" by terminating plaintiff for complaints that concerned internal company matters). To the extent the plaintiff is heard to counter that a public policy is nonetheless implicated where the theory is that the plaintiff was not only terminated just for failing to comply with an internal policy, but was in addition disingenuously terminated for reportedly violating an internal policy that either does not

9

exist or was never made available to the employee, she has failed to provide adequate legal support for this theory.

However, to the extent Kun contends in Count One that she was fired for doing what the law required, it appears that 606 CMR 14.13 mandated the additional review process Kun conducted here. If KinderCare terminated Kun for following this mandatory requirement, that arguably would state a valid wrongful termination claim, even accepting that nothing in the pertinent regulations required KinderCare to retain the employee after conducting the review. Count One therefore states a claim for relief, but only a very, very narrow one, insofar as it alleges that KinderCare terminated the plaintiff because she chose to conduct an additional review as mandated by 606 CMR 14.13. Discovery will determine whether there is any merit to this claim.

Regarding Count Two, none of the three possible theories of liability noted above rests on the allegation that KinderCare terminated the plaintiff for doing something the law requires, for refusing to do something the law forbids, or for asserting a legal right. Rather, even assuming the plaintiff was required to conduct an investigation into possible neglect, Count Two at most alleges that KinderCare fired Kun because it believed she failed to conduct an adequate investigation, or because it concluded (falsely) that she conducted no investigation at all. By contrast, there is no way to read the complaint as alleging that Kun was fired because

she consciously chose to conduct a legally mandated investigation. In short, Count Two does not state a valid claim for wrongful termination.

## IV. Conclusion

For the foregoing reasons, the defendant's motion to dismiss is ALLOWED IN PART and DENIED IN PART.  Count One is dismissed except to the extent it asserts that the defendant terminated the plaintiff for conducting a mandated "additional review" pursuant to 606 CMR 14.13.  Count Two is dismissed in its entirety.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  July 6, 2017